## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) Criminal No. 13-203 (RJL) |
| | ) |
| | ) |
| DAWAYNE BROWN, | ) |
| | ) |
| IRA ADONA, | ) |
| | ) |
| BREAL HICKS, | ) |
| | ) |
| KEITH MATTHEWS, | ) |
| | ) |
| Defendants. | ) |

**FILED**

**JUL 3 0 2014**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION

July 30th, 2014 [## 139, 140]

Defendants Dawayne Brown, Ira Adona, Breal Hicks, and Keith Matthews

(collectively, the "Moving Defendants") have moved to dismiss Counts 3, 9, 11, 13, and

15 of the indictment in this case. *See* Defs.' Joint Mot. to Dismiss Counts 9, 11, 13, and

15 and Incorporated Mem. of P. & A. ("Defs.' Mot.") [Dkt. # 139]; Def. Matthews'

Unopposed Mot. to Adopt and Join Co-Defs.' Mot. to Dismiss Counts 9, 11, 13, and 15

[Dkt. # 140]; Defs.' Reply to Gov't's Response to Defs.' Joint Mot. to Dismiss Counts 3,

9, 11, 13, and 15 ("Defs.' Reply") at 1 n.1 [Dkt. # 149] (adding Count 3 to list of counts

for which defendants seek dismissal). In those five counts, the Moving Defendants are

charged with violations of 18 U.S.C. § 924(c), which punishes anyone who "during and

in relation to any crime of violence or drug trafficking crime . . . for which the person

*may be prosecuted in a court of the United States*, uses or carries a firearm, or who, in

furtherance of any such crime, possesses a firearm . . . ." 18 U.S.C. § 924(c)(1) (2012)

(emphasis added). This pre-trial motion presents the question whether a D.C. Code

offense can serve as the predicate "crime of violence" underlying a charged violation of

§ 924(c), or instead whether a federal, U.S. Code offense is required.

I conclude Congress intended for § 924(c) to reach only federal, U.S. Code crimes.

And therefore, notwithstanding this District Court's unique jurisdictional mandate, the

Government may *not* bring § 924(c) charges in the District of Columbia that it quite

clearly could not bring elsewhere in any of the fifty states—i.e., charges predicated on

local or state crimes—which would otherwise unfairly subject D.C. defendants to more

severe penalties. Accordingly, after careful consideration of the Moving Defendants'

motion, the Government's opposition thereto,[1] the arguments of counsel at the motions

hearing held on May 29, 2014, the parties' supplemental pleadings,[2] and the relevant law,

the Court GRANTS the Moving Defendants' motion and DISMISSES Counts 3, 9, 11,

13, and 15 from the indictment.[3]

## BACKGROUND

The four Moving Defendants, along with two other defendants, were indicted by a

---

[1] Gov't Response to Def. Brown's Mot. to Dismiss Counts 9, 11, 13, and 15 ("Gov't Opp'n") [Dkt. # 143].

[2] Supplement to Defs.' Reply to Gov't Response to Defs.' Joint Mot. to Dismiss Counts 3, 9, 11, 13, and 15 ("Defs.' Suppl. Brief") [Dkt. # 153]; Gov't Supplemental Response to Def. Brown's Supplement to Defs.' Reply Brief Regarding Motions Regarding Multiplicity ("Gov't Suppl. Brief") [Dkt. # 155].

[3] The Court gave its ruling from the bench during a July 1, 2014, status hearing. This memorandum opinion follows to explain the Court's ruling in greater detail.

federal grand jury in September 2013 for numerous charges, including Conspiracy to Distribute and Possess with Intent to Distribute One Kilogram or More of a Mixture or Substance Containing Phencyclidine, in violation of 21 U.S.C. § 846. *See* Superseding Indictment [Dkt. # 25] (Count 1). The 39-count indictment also charges the Moving Defendants with additional crimes of violence, firearms offenses, and narcotics offenses, some of which are federal, U.S. Code offenses, and some of which are local, D.C. Code offenses.

As relevant here, the Moving Defendants are charged in Counts 9, 11, 13, and 15 with Using, Carrying, and Possessing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1). Each of those four counts is tied to an underlying D.C. Code offense as the predicate "crime of violence" supporting the § 924(c) charge: Count 9 relates to Count 8, which alleges Kidnapping While Armed, in violation of D.C. Code §§ 22-2001, 22-4502; Count 11 relates to Count 10, which alleges Armed Robbery, in violation of D.C. Code §§ 22-2801, 22-4502; Count 13 relates to Count 12, which alleges Extortion While Armed, in violation of D.C. Code §§ 22-3251, 22-4502; and Count 15 relates to Count 14, which alleges First Degree Burglary While Armed, in violation of D.C. Code §§ 22-801(a), 22-4502. In addition, one of the Moving Defendants, Keith Matthews, is alone charged in Count 3 with an additional violation of § 924(c) in relation to a crime of violence, relating to Count 2, which alleges Assault With a Dangerous Weapon, in violation of D.C. Code §§ 22-402, 22-4502.[4]

---

[4] The four Moving Defendants are also together charged with one additional violation of § 924(c) in Count 17, and two of the Moving Defendants, Ira Adona and Breal Hicks, are

3

Section 924(c) provides for a five-year (or longer) mandatory minimum prison sentence for using, carrying, or possessing a firearm during a crime of violence. *See* 18 U.S.C. §§ 924(c)(1)(A)(i-iii), (B)(i-ii) (setting forth minimum sentences of five years; seven years if firearm is brandished; ten years if firearm is discharged; and ten or thirty years if firearm has certain characteristics). But it also provides for an even longer mandatory minimum penalty—twenty-five years—for a second or subsequent § 924(c) conviction. *See* § 924(c)(1)(C)(i).[5] And further, it mandates that such mandatory sentences for multiple § 924(c) convictions shall not run concurrently with each other or with any other term of imprisonment imposed on the person. *See* § 924(c)(1)(D).[6]

As a result of this "stacking" effect of consecutive sentences, defendants who are charged with multiple § 924(c) counts, such as the Moving Defendants here, face very long mandatory minimum sentences if convicted. In this case, the four Moving

---

charged with two additional violations of § 924(c) in Counts 28 and 29. These three § 924(c) counts relate to predicate *drug trafficking crimes*, however—which are indisputably federal, U.S. Code offenses, *see infra* p. 8 & note 10—not predicate *crimes of violence*, and the Moving Defendants do not challenge them in the instant motion.

[5] If the firearm has certain characteristics, however, the mandatory penalty for a second or subsequent conviction is life in prison. *See* 18 U.S.C. § 924(c)(1)(C)(ii).

[6] Section 924(c)(1)(D) provides:

Notwithstanding any other provision of law—

(i) a court shall not place on probation any person convicted of a violation of this subsection; and

(ii) no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

18 U.S.C. § 924(c)(1)(D).

Defendants effectively face a mandatory life sentence.[7]   Defendant Brown is charged in the indictment with five counts of violating § 924(c), four of which are challenged in the instant motion.  If convicted of all five predicate crimes and the corresponding § 924(c) charges, the § 924(c) convictions, *alone*, would subject him to a mandatory minimum sentence of 105 years in prison.  *See* Defs.' Suppl. Brief at 3.  Defendant Adona is charged with seven counts of violating § 924(c) in total, exposing him to a potential mandatory minimum sentence of 155 years in prison.[8]   And defendants Hicks and Matthews are each charged with six counts of violating § 924(c) in total, exposing them to potential mandatory minimum sentences of 130 years in prison.

## ANALYSIS

This case presents a statutory construction question of first impression in our Circuit: what does the phrase "crime of violence . . . for which the person may be prosecuted in a court of the United States" in 18 U.S.C. § 924(c) mean in the specific jurisdictional context of the District of Columbia?[9]   The Moving Defendants contend it

---

[7] For purposes of these calculations, I will assume that each Moving Defendant's first § 924(c) conviction would carry a five-year sentence; that the relevant predicate crimes would not merge at sentencing; and that each charged predicate crime can, in fact, support a separate § 924(c) charge.  *See United States v. Anderson*, 59 F.3d 1323, 1334 (D.C. Cir. 1995) (en banc) (holding one underlying crime cannot be the predicate for more than one § 924(c) conviction); *United States v. Wilson*, 160 F.3d 732, 748-50 (D.C. Cir. 1998) (vacating one of two § 924(c) convictions where the two predicate crimes of violence underlying those convictions arose from defendant's single use of a firearm).  These remain open issues in this case, however, and have been the subject of briefing by the parties.

[8] At least with regard to Counts 28 and 29, however, which charge defendant Adona with two counts of violating § 924(c) in relation to a drug trafficking offense, the Government has acknowledged that they would merge at sentencing.  *See* Gov't's Suppl. Brief at 5 n.2.

[9] *See* Gov't's Memo. in Supp. of Court's Acceptance of Plea Agreement at 6 [Dkt. # 144] ("the government recognizes that the D.C. Circuit has not yet addressed the specific issue [raised by

5

means only federal crimes punishable under the U.S. Code. The Government, by
contrast, reads the phrase more expansively to encompass not only federal offenses, but
also D.C. Code offenses which, by operation of a jurisdictional statute unique to the
District of Columbia, can be brought in this federal district court (under certain
conditions).

The question is an important one. If the Moving Defendants' interpretation is
correct, then the five challenged § 924(c) counts do not properly lie and must be
dismissed, significantly reducing their penalty exposure. If the Government is correct,
however, it would mean that the Moving Defendants face potential mandatory life
sentences. But beyond the consequences for these particular defendants, it would also
mean the Government can charge defendants in this District with § 924(c) counts that it
could not bring anywhere else in the country, thereby exposing defendants here to harsher
federal penalties for similar conduct.

Because I conclude that the language of the statute is ambiguous as to the precise
issue before this Court, I have had to look at the legislative history and utilize other tools

---

defendant Brown's motion to dismiss § 924(c) charges]"). In fact, I was unable to locate a single
case in this District addressing, or even involving, a situation where the Government charged a
§ 924(c) violation predicated on a D.C. Code offense. *Cf. Wilson*, 160 F.3d at 748-50 & n.20
(where Government charged two counts of § 924(c) tied to two federal predicates—killing a
witness, in violation of 18 U.S.C. § 1512(a)(1)(A), and retaliating against a witness, in violation
of 18 U.S.C. § 1513(a)(1)(B)—as well as one count of the *D.C. Code offense of possession of a
firearm during a crime of violence*, in violation of D.C. Code § 22-3204(b) (now codified at D.C.
Code § 22-4504(b)), tied to the predicate of first degree murder while armed, in violation of D.C.
Code §§ 22-2401 and 22-3202, the court rejected defendant's argument that his D.C. Code
murder conviction merged with his two federal convictions, but vacated one of the two § 924(c)
convictions because the two predicate federal crimes of violence underlying those convictions
arose from the defendant's single use of a firearm); *see also* Indictment, *United States v. Wilson*,
Criminal Case No. 96-319 (D.D.C. Sept. 19, 1996) [Dkt. # 3].

of statutory construction to discern Congress' intent.  Having done so, however, I find that these sources clearly indicate that Congress in fact intended § 924(c)'s scope to reach only federal, U.S. Code predicates, *not* state felonies.  And even if this intent were not clear, the ambiguity in the statute *alone* would be sufficient to invoke the rule of lenity in favor of the Moving Defendants here.  Accordingly, for the following reasons I find that a D.C. Code offense cannot support a § 924(c) charge, and therefore the challenged counts must be dismissed.

## I.    Plain Text of the Statute

As with all exercises in statutory interpretation, the language of the statute itself is the Court's starting point.  *E.g.*, *Ransom v. FIA Card Servs., N.A.*, 131 S. Ct. 716, 723-24 (2011).  Indeed, the Supreme Court has said that "[t]he first step is to determine whether the language at issue has a plain and unambiguous meaning *with regard to the particular dispute in the case*."  *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (emphasis added) (internal citations and quotation marks omitted).  "[I]f the statutory language is unambiguous and the statutory scheme is coherent and consistent[, the inquiry ceases]."  *Id.*  If not, however, I must turn to other tools of statutory construction. *See Russell Motor Car Co. v. United States*, 261 U.S. 514, 519 (1923) ("Rules of statutory construction are to be invoked as aids to the ascertainment of the meaning or application of words otherwise obscure or doubtful.  They have no place, as this court has many times held, except in the domain of ambiguity.")  For the reasons discussed below, I find § 924(c) to be ambiguous with regard to the particular issue in this case.

Section 924(c)(1) provides, in relevant part:

> . . . any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--[be sentenced to an additional, mandatory term of imprisonment].

18 U.S.C. § 924(c)(1) (2012). Although the statute then defines the term "drug trafficking crime" in a manner that makes clear it must be a federal, U.S. Code offense, *see* 18 U.S.C. § 924(c)(2),[10] it does not define "crime of violence" with similar clarity. Instead, a "crime of violence," for purposes of § 924(c), is defined generally as a felony that either "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3).

The question presented by the instant motion, therefore, is what universe of predicate crimes is covered by the phrase "crime of violence . . . for which the person may be prosecuted in a court of the United States." The Moving Defendants argue that it means only federal crimes. *See* Defs.' Mot. at 2. The Government, by contrast, argues that the phrase is unambiguous and means just what it says—i.e., literally *any* crime of violence offense, regardless whether federal or state, that technically *may* be brought in a federal district court. *See* Gov't's Opp'n at 2-7.

---

[10] "For purposes of [§ 924(c)], the term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 *et seq*.), the Controlled Substances Import and Export Act (21 U.S.C. 951 *et seq*.), or chapter 705 of title 46." 18 U.S.C. § 924(c)(2) (2012).

As an initial matter, this question would present little difficulty if raised in any other federal district court in the country because the distinction between the parties' two readings of the statute would be one without a difference. Put simply, outside of the District of Columbia, the phrase "crime of violence . . . for which the person may be prosecuted in a court of the United States" is susceptible to only one meaning—a federal, U.S. Code offense. This is true for two reasons. First, a federal district court is "a court of the United States,"[11] and there is no dispute that in the context of criminal jurisdiction, the phrase "may be prosecuted in a court of the United States" limits the application of § 924(c) to crimes of violence which can be charged in a federal district court.[12] *See* Gov't's Opp'n at 2; 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."). Second, it is axiomatic that federal courts do not have jurisdiction over state criminal offenses.[13] *See Beal v. Missouri Pac. R.R. Corp.*, 312 U.S. 45, 49-50 (1941) ("The federal courts are without jurisdiction to try alleged criminal violations of

---

[11] *See* 28 U.S.C. § 451 ("As used in [Title 28 (Judiciary and Judicial Procedure)]: The term 'court of the United States' includes . . . district courts constituted by chapter 5 of this title . . .").

[12] There are certain, limited exceptions, however: Congress has also vested the federal jurisdiction of U.S. District Courts (listed in 28 U.S.C. ch. 5), including over criminal offenses, in the district courts for Guam, *see* 48 U.S.C. § 1424, the Northern Mariana Islands, *see* 48 U.S.C. § 1822, and the Virgin Islands, *see* 48 U.S.C. § 1612. Congress has also specifically made these courts "courts of the United States" for purposes of Title 18. *See* 18 U.S.C. § 23 ("As used in [Title 18], except where otherwise expressly provided the term 'court of the United States' includes the District Court of Guam, the District Court for the Northern Mariana Islands, and the District Court of the Virgin Islands.").

[13] The district courts for Guam, the Northern Mariana Islands, and the Virgin Islands might be viewed as an "exception" to this rule but for the fact they are not technically U.S. District Courts. *See* 28 U.S.C. § 451 ("The terms 'district court' and 'district court of the United States' mean the courts constituted by chapter 5 of this title."); 28 U.S.C. §§ 81-131 (enumerating judicial districts).

state statutes."); *Jerome v. United States*, 318 U.S. 101, 104-05 (1943) ("Since there is no

common law offense against the United States, the administration of criminal justice

under our federal system has rested with the states, except as criminal offenses have been

explicitly prescribed by Congress." (internal citations omitted)); *United States v. Hudson*,

11 U.S. 32, 32-34 (1812) (holding that federal courts do not have jurisdiction to try

criminal charges based on the common law, and all federal crimes must be based on a

statute of Congress).  Accordingly, the only criminal offenses that can be prosecuted in

(almost all) federal district courts are federal, U.S. Code offenses.

Not so in the District of Columbia, however, where this District Court has unique

jurisdictional features.  Until the enactment of the District of Columbia Court Reform and

Criminal Procedure Act of 1970 ("Court Reform Act"), Pub. L. No. 91-358, 84 Stat. 473

(1970), federal courts in D.C. exercised a combination of federal and local jurisdiction,

including original jurisdiction over all felony cases.  *See, e.g.*, *Thompson v. United States*,

548 F.2d 1031, 1033-34 (D.C. Cir. 1976).  Through the Court Reform Act, Congress

provided for the Superior Court and the District of Columbia Court of Appeals to assume

responsibility for local jurisdiction, similar to that exercised by state courts, including

over criminal matters.  *See id.*  But the act did not completely end this District Court's

jurisdiction over local criminal offenses, as the Government rightly points out.  *See*

Gov't's Opp'n at 3.  Instead, as part of the same act, Congress provided that "the United

States District Court for the District of Columbia has jurisdiction of . . . [a]ny offense

under any law applicable exclusively to the District of Columbia which offense is joined

in the same information or indictment with any Federal offense."  Court Reform Act,

Pub. L. No. 91-358, title I, § 111, 84 Stat. 473, 477-78 (codified at D.C. Code § 11-502(3)); *see also* D.C. Code § 23-101.  In other words, this Court may still exercise jurisdiction over local D.C. Code criminal offenses, but only in a manner similar to pendent jurisdiction.  *See United States v. Kember*, 648 F.2d 1354, 1359-60 (D.C. Cir. 1980) (analogizing D.C. Code § 11-502(3) to civil law doctrine of pendent jurisdiction over state claims); *United States v. Shepard*, 515 F.2d 1324, 1330-31 (D.C. Cir. 1975) (same).  Accordingly, the Government is technically correct—and the Moving Defendants do not dispute, as a jurisdictional matter—that the D.C. Code offenses underlying the challenged § 924(c) counts in this case *may* be prosecuted in this Court, provided they are properly joined to federal offenses in the same indictment.[14]

Based on this unique jurisdictional statute, the Government contends that the "clear and unambiguous" plain language of § 924(c) requires the conclusion that the Government is permitted to charge the way it did here.  *See* Gov't's Opp'n at 4. Unfortunately, the issue is not so simple.  Indeed, it is ironic, to say the least, that the very statute that makes the Government's reading possible—D.C. Code § 11-502(3)—is also what makes § 924(c) ambiguous as applied to the case before me.  For in the final analysis, there are two plausible ways to read the phrase "may be prosecuted in a court of the United States" as regards a predicate crime of violence.  Taken most literally (and

---

[14] There is no dispute between the parties that the D.C. Code offenses underlying the challenged § 924(c) counts are properly joined.  *See United States v. Richardson*, 161 F.3d 728, 733-34 (D.C. Cir. 1998) ("Joined means 'properly joined in accordance with [Federal Rule of Criminal Procedure] 8(a).'  To be properly joined under Rule 8(a), offenses must be 'of the same or similar character or based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.'" (internal citations omitted)).

broadly), the phrase could encompass any crime of violence that *may*—i.e., can possibly—be prosecuted in a federal district court, which might include, as here, non-federal crimes that can be brought in federal court only by operation of some other statute. On the other hand, the language could be read more narrowly (and perhaps more naturally) as simply meaning federal offenses—i.e., only crimes of violence that *themselves* may be prosecuted in federal district court *directly* because such court has original jurisdiction over them, a universe limited to federal, U.S. Code offenses. *See* 18 U.S.C. § 3231. Accordingly, my inquiry does not end with the plain text of § 924(c), and I must look at the legislative history.

## II.    Statutory and Legislative History

Though the legislative history was, unfortunately, not briefed by the parties, "[w]here, as here, resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear." *Blum v. Stenson*, 465 U.S. 886, 896 (1984). Having done so, I conclude that Congress clearly intended to punish only using, carrying, or possessing a firearm in relation to the commission of a *federal* crime—i.e., a U.S. Code violation—and not state or local crimes. Thus, notwithstanding the District of Columbia's unique federal character, I find Congress did not intend to reach these acts and, moreover, it would be manifestly unfair to do so.

### a.  Original Enactment

Congress enacted § 924(c) in October 1968 as part of the Gun Control Act of

1968, Pub. L. No. 90-618, 82 Stat. 1213.[15]  In its initial form, Section 924(c) read, in

relevant part:

> Whoever—(1) uses a firearm to commit *any felony which may be
> prosecuted in a court of the United States*, or (2) carries a firearm
> unlawfully during the commission of *any felony which may be prosecuted
> in a court of the United States*, shall be sentenced to a term of
> imprisonment for not less than one year nor more than 10 years.

Pub. L. No. 90-618, § 924(c), 82 Stat. 1213 (emphasis added).  This provision was

originally offered as an amendment on the House Floor by Representative Richard Poff

of Virginia, *see* 114 Cong. Rec. 22231 (July 19, 1968), and passed the same day, *see id.*

at 22248.  As a result, "the committee reports and congressional hearings to which [the

court] normally turn[s] for aid in these situations simply do not exist, and [the court is]

forced in consequence to search for clues to congressional intent in the sparse pages of

floor debate that make up the relevant legislative history."  *Busic v. United States*, 446

U.S. 398, 405 (1980) (specifically discussing § 924(c) and the Poff amendment),

*superseded by statute*, Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473,

§ 1005, 98 Stat. 1837, *as recognized in Abbott v. United States*, 131 S. Ct. 18, 28 (2010).

In introducing the amendment, Congressman Poff made it unmistakably clear that the

provision applied only to *federal* predicate felonies, and his remarks, while "not

dispositive of the issue of § 924(c)'s reach, [] are certainly entitled to weight, coming as

---

[15] Technically, Section 924(c) was first added to Title 18 of the U.S. Code in June 1968 as part of
the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, 82 Stat. 197
(1968).  But that original provision addressed *forfeiture* of firearms (or ammunition) "involved
in, or used or intended to be used in, any violation of the provisions of this chapter, or a rule or
regulation promulgated thereunder, or violation of any other criminal law of the United States,"
rather than enhancing the sentence of a felon who used, carried, or possessed a firearm in relation
to another crime.

they do from the provision's sponsor." *Simpson v. United States*, 435 U.S. 6, 13 (1978) (discussing Poff's remarks), *superseded by statute*, Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, § 1005, 98 Stat. 1837, *as recognized in United States v. Gonzales*, 520 U.S. 1, 10 (1997).

First, Congressman Poff stated that his amendment "makes it a separate Federal crime to use a firearm in the commission of *another Federal crime*," 114 Cong. Rec. 22231 (emphasis added), and he explained that the purpose of attaching a mandatory minimum sentence is "to persuade the man who is tempted to commit a *Federal* felony to leave his gun at home," *id*. (emphasis added).  Next, and more importantly, he explicitly contrasted his proposed amendment with one proposed earlier by Representative Bob Casey of Texas—which would have applied to both federal *and state* felonies—and set forth his legal, practical, and policy reasons for why "[m]y substitute is confined to Federal felonies." *See id*. at 22231-32.  In explaining one of those reasons for limiting the application of his amendment to federal felonies—avoiding the burden on the prosecutor of proving a given firearm moved in interstate commerce in order to establish federal jurisdiction—Congressman Poff noted that "[e]very Federal felony *defined in the code* already has its own jurisdictional base," *id*. at 22231, which further indicates he contemplated only U.S. Code offenses as predicates.

Ultimately, a Conference Committee adopted Congressman Poff's version of § 924(c) with only minor changes, and the Conference Report itself described the House bill as punishing "a person [who] uses a firearm to commit, or carries a firearm unlawfully during the commission of, a *Federal* felony." *See* H.R. Rep. No. 90-1956, at

31 (1968) (Conf. Rep.) (emphasis added); *see also Simpson*, 435 U.S. at 14 (detailing Congressional process of approving § 924(c)).  Given the existence of such clear legislative history, I think it beyond question that Congress intended § 924(c) to apply only to federal predicate crimes when it first enacted the provision. *See United States v. Dorsey*, 591 F.2d 922, 941 (D.C. Cir. 1978) (noting that statement by Congressman Poff "made in the context of explaining why the drafters had *not* included *state* offenses among those felonies the commission of which is an element of section 924(c)(2) . . . seems *relevant* only to *defining the 'commission of [a] felony' element* under section 924(c)(2)" (emphasis added)), *superseded by statute as recognized in United States v. Fennell*, 53 F.3d 1296, 1300-01 (D.C. Cir. 1995).[16]

To be sure, at the time § 924(c) was first enacted in 1968, this District Court still had original jurisdiction over D.C. Code felonies. *See supra* at 10-11 (discussing Court Reform Act).  But there is no basis to believe Congress intended to treat D.C. crimes any differently from state crimes for purposes of § 924(c).  In fact, the additional context and legislative history available persuades me of just the opposite because the *very same Congress* that enacted § 924(c) in 1968 passed a similar measure for the District of Columbia just nine months earlier, amending a D.C. Code provision that punished

---

[16] At the time of the *Dorsey* decision, § 924(c)(2) read as follows:

> Whoever . . . carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States, shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years.

18 U.S.C. 924(c)(2) (1976).

possessing a firearm during the commission of a crime of violence by enhancing its penalties. *See* Pub. L. No. 90-226, § 605, 81 Stat. 734 (1967) (now codified at D.C. Code § 22-4504(b)).[17]  Indeed, as Senator Peter Dominick of Colorado noted on the Senate floor when proposing an amendment to the Gun Control Act of 1968 that differed slightly from Congressman Poff's (in that it proposed to punish the defendant who used or carried a firearm while committing a "Federal crime of violence" as opposed to a "Federal felony," *see* 114 Cong. Rec. 22231), his amendment was "based on the same formula, insofar as practicable, as that approved by the Congress and signed by the President just 9 months ago as part of the omnibus crime law for the District of Columbia."  114 Cong. Rec. 27142 (Sept. 17, 1968) (statement of Senator Dominick).  Like Congressman Poff's ultimately successful amendment, *see* 114 Cong. Rec. 22231, Senator Dominick stressed

---

[17] Congress initially passed a statute making it a distinct offense to "commit a crime of violence in the District of Columbia when armed with or having readily available any pistol or other firearm" in 1932. *See* Pub. L. No. 72-275, ch. 465, § 2, 47 Stat. 651 (1932) (providing for a term of imprisonment of up to five years for a first conviction, up to ten years for a second conviction, up to fifteen years for a third conviction, and up to thirty years for a fourth or subsequent conviction). In 1967, Congress amended this provision to delineate "other dangerous or deadly weapon[s]" that triggered the statute, as well as to enhance its penalties. *See* Pub. L. No. 90-226, § 605, 81 Stat. 734 (1967) (providing that person violating the provision "may in addition to the punishment provided for the crime [of violence] be punished by imprisonment for an indeterminate number of years up to life as determined by the court," and, for a person committing a subsequent violation, "the court shall not suspend his sentence or give him a probationary sentence"). In its current form, that D.C. Code provision now provides:

> No person shall within the District of Columbia possess a pistol, machine gun, shotgun, rifle, or any other firearm or imitation firearm while committing a crime of violence or dangerous crime as defined in § 22-4501. Upon conviction of a violation of this subsection, the person may be sentenced to imprisonment for a term not to exceed 15 years and shall be sentenced to imprisonment for a mandatory-minimum term of not less than 5 years and shall not be released on parole, or granted probation or suspension of sentence, prior to serving the mandatory-minimum sentence.

D.C. Code § 22-4504(b).

that his proposed amendment applied only to predicate federal crimes, not state crimes. *See* 114 Cong. Rec. 27143. Acknowledging that any version of the amendment so cabined to federal crimes would necessarily be limited in effect because most crimes are state crimes, he nonetheless emphasized that "[b]y its enactment, [Congress] can stress to State and local legislative bodies the desirability of their enacting similar measures. We recently took this step for residents of the District of Columbia. Let us now do it for the rest of the Nation." *Id*. Although Congress ultimately adopted Congressman Poff's version of § 924(c) over Senator Dominick's, I nonetheless find this floor statement instructive for two reasons: (1) Senator Dominick discussed D.C. much like a state for purposes of § 924(c), and (2) it highlights that the very Congress that enacted § 924(c) did so with knowledge that it had just months earlier amended a similar statute that applied to local, D.C. Code crimes of violence.

Considered together, these factors—the sponsor's statements, Congress' specific rejection of the alternative Casey amendment, the use of the word "federal" in the Committee Report, and the pre-existence of a parallel provision in the D.C. Code—leave one hard pressed to find *any* congressional intent whatsoever to capture D.C. Code offenses as predicate crimes triggering § 924(c), regardless of D.C.'s unique federal status.

### b. Subsequent Amendments

Congress has subsequently amended § 924(c) multiple times, often to expand its reach or increase the severity of its penalties. *See, e.g., Abbott v. United States*, 131 S. Ct. 18, 29 (2010) (recounting statutory amendments to § 924(c)). Yet there is no

indication that Congress' intent changed over time as to the scope of predicate crimes sufficient to support a § 924(c) charge.  How so?

As relevant here, Congress amended § 924(c) as part of the Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837 (1984), in part by replacing the "any felony" language with the phrase "any crime of violence."  Pub. L. No. 98-473, § 1005.[18]  In that same act, Congress added a definition of "crime of violence" to Title 18, which applied to all of the provisions in that title that used the phrase, including § 924(c).  *See* S. Rep. No. 98-225, at 307 (1983).  The term "crime of violence" meant "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  Pub. L. No. 98-473, § 1001 (codified at 18 U.S.C. § 16).  Although this definition of "crime of violence" does not, on its face, illuminate whether the crime must be federal or not, the

---

[18] The 1984 act amended § 924(c) to read as follows:

> (c) Whoever, during and in relation to any crime of violence, including a crime of violence which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device, for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence, be sentenced to imprisonment for five years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for ten years.  Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence in which the firearm was used or carried.  No person sentenced under this subsection shall be eligible for parole during the term of imprisonment imposed herein.

Pub. L. No. 98-473, § 1005, 98 Stat. 1837 (1984).

legislative history for the amendment to § 924(c) itself makes clear, once again, that Congress had in mind only federal crimes of violence as predicates.  The Senate Committee Report explained:

> The Committee has concluded that subsection 924(c) should be completely revised to ensure that all persons who commit *Federal* crimes of violence, including those crimes set forth in statutes which already provide for enhanced sentences for their commission with a dangerous weapon, receive a mandatory sentence, without the possibility of the sentence being made to run concurrently with that for the underlying offence or for any other crime without the possibility of a probationary sentence or parole.

S. Rep. No. 98-225, at 313 (emphasis added; footnote omitted).[19]

Just two years later, in 1986, Congress again amended § 924(c) through the Firearms Owners' Protection Act of 1986.  *See* Pub. L. No. 99-308, 100 Stat. 449 (1986). In that act, Congress clarified which predicate felonies qualified to trigger § 924(c) by bifurcating the statutory predicate, expanding the phrase "crime of violence" to include a "crime of violence or drug trafficking crime."  Pub. L. No. 99-308, § 104.  The act also added definitions for both "crime of violence" and "drug trafficking crime" to § 924(c) itself.  And while Congress expressly defined "drug trafficking crime" as a federal offense,[20] Congress simply carried over the pre-existing statutory definition of "crime of

---

[19] In amending § 924(c), Congress was responding to perceived drafting problems and interpretations of the provision by the Supreme Court that had "reduced its effectiveness as a deterrent to crime."  *See* S. Rep. No. 98-225, at 312.  In particular, Congress intended the new "crime of violence" language to overrule the Supreme Court's interpretation—in *Simpson v. United States*, 435 U.S. 6 (1978), and *Busic v. United States*, 446 U.S. 398 (1980)—that § 924(c) did not apply to cases in which the predicate statute contained its own, built-in enhancement provision for the use of a dangerous weapon.  *See* S. Rep. No. 98-225, at 312-14.

[20] *See* Pub. L. No. 99-308, § 104 (codified at 18 U.S.C. § 924(c)(2)) ("For purposes of this subsection, the term 'drug trafficking crime' means any felony violation of *Federal* law involving the distribution, manufacture, or importation of any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)." (emphasis added)).  Congress

violence" from 18 U.S.C. § 16 (while adding the requirement that the crime be a felony).
*See* Pub. L. No. 99-308, § 104 (codified at 18 U.S.C. § 924(c)(3)) ("For purposes of this
subsection the term 'crime of violence' means an offense that is a felony and — (A) has
as an element the use, attempted use, or threatened use of physical force against the
person or property of another, or (B) that by its nature, involves a substantial risk that
physical force against the person or property of another may be used in the course of
committing the offense.").

Why Congress chose to make it expressly clear in the text of the statute itself that
a "drug trafficking crime" is a "federal" felony drug offense while not providing
comparable clarity for the term "crime of violence," I cannot tell.  But once again, the
relevant legislative history demonstrates that Congress, when amending § 924(c),
continued to conceive of that statute as applying to federal crimes of violence.  *See* H.R.
Rep. No. 99-495, at 27 (1986) (the amendment providing for a mandatory prison term for
whoever uses or carries a firearm during and in relation to a drug trafficking crime
"expands the coverage of the mandatory prison term for using or carrying [a] firearm
during and in relation to a *Federal* crime of violence enacted in October 1984" and "is
consistent with Recommendation 17 of The Attorney General's Task Force on Violent
Crime that the mandatory prison term for the use of a firearm apply not only to the
commission of crimes of violence but to the commission of *Federal* felonies generally"

---

later amended the definition and expressly delineated which U.S. Code provisions must be
violated to qualify as a "drug trafficking crime." *See* § 924(c)(2) (2012); *supra* note 10.

(emphasis added)).[21]

In sum, nowhere in the history of the statute, its multiple amendments, or the accompanying legislative history can I discern any change in Congress' originally-expressed intent to target only federal felonies.  Nor can I discern any intention to include D.C. Code offenses by the use of the term "federal" in the legislative history.  As such, the statutory and legislative history overwhelmingly supports the Moving Defendants' construction of the statute—not the Government's!

## III.    Prior Judicial Interpretation

Case law addressing § 924(c) further supports the Moving Defendants' position that the section only applies to federal felonies.  Although I am not aware of any precedent squarely addressing the specific issue before this Court, the Moving Defendants accurately point out that many courts have interpreted the phrase "crime . . . for which [the defendant] may be prosecuted in a court of the United States" to mean a federal crime.  *See* Defs.' Mot. at 2-4.

In particular, the Supreme Court has routinely treated the phrase as synonymous with a federal crime.  In *United States v. Gonzalez*, 520 U.S. 1 (1997), for instance, the Supreme Court considered whether federal courts are required to run a term of imprisonment under § 924(c) consecutively with a state-imposed sentence.  In reaching its holding that they are, the Court contrasted the phrase "any crime of violence or drug

---

[21] In 1998, Congress amended § 924(c) again, this time in response to the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995), holding that "use" of a firearm did not include "mere possession." *See Abbott*, 131 S. Ct. at 25.  The 1998 amendment thus brought possession within the scope of the statute. *See* Pub. L. No. 105-386, 112 Stat. 3469 (1998).

trafficking crime . . . for which he may be prosecuted in a court of the United States" with the text of another sentence in § 924(c) (now codified at § 924(c)(1)(D)(ii)), which prohibited courts from running sentences imposed under the section concurrently with "any other term of imprisonment." *Gonzalez*, 520 U.S. at 5. Unlike the unrestricted phrase "any other term of imprisonment," the Court highlighted that "Congress *explicitly* limited the scope of the phrase 'any crime of violence or drug trafficking crime' to those 'for which [a defendant] may be prosecuted in a court of the United States,'" *id.* at 5 (emphasis in original), and in the very next sentence of the opinion described this as meaning that "Congress expressly limited the phrase 'any crime' to only *federal* crimes," *id.* (emphasis added).

The Supreme Court has made similar observations—often drawing directly on Congressman Poff's statements and the legislative history—in other cases too. *See Busic*, 446 U.S. at 399 (stating § 924(c) "authorizes the imposition of enhanced penalties on a defendant who uses or carries a firearm while committing a *federal* felony" (emphasis added)); *Simpson*, 435 U.S. at 10 ("Quite clearly, §§ 924(c) and 2113(d) are addressed to the same concern and designed to combat the same problem: the use of dangerous weapons—most particularly firearms—to commit *federal* felonies." (emphasis added)); *see also United States v. Rodriguez-Moreno*, 526 U.S. 275, 283 (1999) (Scalia, J., dissenting) ("The provisions of the *United States Code defining the particular predicate offenses* already punish all of the defendant's alleged criminal conduct except his use or carriage of a gun; § 924(c)(1) itself criminalizes and punishes such use or carriage 'during' the predicate crime, because that makes the crime more dangerous." (emphasis

added)); *Muscarello v. United States*, 524 U.S. 125, 132 (1998) (discussing § 924(c)'s broad purpose and noting "the provision's chief legislative sponsor has said that the provision seeks 'to persuade the man who is tempted to commit a Federal felony to leave his gun at home.'" (citation omitted)).

While the Moving Defendants also cite to several decisions from other Circuits listing a "federal" crime as an element of a § 924(c) violation,[22] our own Circuit Court has been similarly straightforward in its even more specific assessment that the predicate must be a U.S. Code violation.  In *United States v. Anderson*, 59 F.3d 1323 (D.C. Cir. 1995) (en banc), our Circuit Court held that one underlying predicate offense could not support multiple § 924(c) convictions.  *Anderson*, 59 F.3d at 1328.  In reaching this conclusion, the court—though not addressing the precise situation before this Court involving D.C. Code offense predicates—necessarily did focus in detail on the *predicate* offense underlying a § 924(c) charge, and in doing so interpreted the statute as meaning "[t]he underlying drug offense or crime of violence is *already made a federal crime under another section of the federal code*."  *Id.* at 1331 (emphasis added); *see also Dorsey*, 591 F.2d at 942 (describing, under *Blockburger* test, the proof of a fact necessary for a § 924(c)(2) violation as "unlicensed carrying during commission of a *federal* felony" (emphasis added)).

Thus, while the persuasiveness of this prior precedent is somewhat limited because it does not squarely address the issue before this Court, I nonetheless find it further

---

[22] *See* Defs.' Mot. at 3-4 (citing *United States v. Angilau*, 717 F.3d 781, 788 (10th Cir. 2013); *United States v. McClellan*, 436 Fed. App'x 479, 488 (6th Cir. 2011)).

supports the Moving Defendants' position. At a minimum, to the extent some federal

courts have simply assumed, without any analysis, that the phrase "may be prosecuted in

a court of the United States" connotes a federal crime, it serves to highlight what an

anomalous circumstance is presented by the Government's charging decision in this case.

But it is also quite clear that when other federal courts—including our own Circuit Court

in *Anderson*—have engaged in deeper analysis, often citing the legislative history, they

have reached the very same conclusion.[23] Therefore, contrary to the Government's

suggestion, some courts have indeed done much more than merely use the term "federal"

in the phrase "federal felony" as "shorthand" for the proposition that § 924(c) charges are

limited to predicate offenses that may be brought in federal court. *See* Gov't's Opp'n at

2-3.[24]

---

[23] In a case perhaps closest to paralleling the situation facing this Court, the District Court of the Virgin Islands addressed the issue of a § 924(c) charge tied to a predicate Virgin Islands Code offense. *See Gov't of the Virgin Islands v. Frett*, 684 F. Supp. 1324 (D.C.V.I. 1988). Although the District Court of the Virgin Islands is not technically a U.S. District Court like this Court, it does possess similar federal jurisdiction, *see supra* notes 12-13, and also has jurisdiction over local offenses. In *Frett*, the court held that § 924(c) requires a federal predicate offense, finding—as I do—ambiguity in the phrase "may be prosecuted in a court of the United States," and concluding that Congress did not intend to reach local crimes with that statute. The court further noted that applying § 924(c) charges to Virgin Islands Code offenses "would unduly distinguish prosecutions of § 924(c) in [the District Court of the Virgin Islands] and those in the United States District Courts" and relied on the rule of lenity. *Frett*, 684 F. Supp. at 1328-29. Although the *Frett* court did not parse the legislative history as I have in this opinion, I find its rationale further supports my ruling today.

[24] Finally, I find it noteworthy that the Department of Justice's own Criminal Resource Manual describes predicate crimes of violence under § 924(c) as "federal." *See* Dep't of Justice, United States Attorneys' Manual, Title 9, Criminal Resource Manual 1434 (1997) ("To avoid exacerbating the conflict in the circuits on this issue [of the relevant unit of prosecution for a § 924(c) charge], the Criminal Division urges prosecutors to base each § 924(c) count on a separate, distinct predicate narcotics offense or *Federal* crime of violence." (emphasis added)).

## IV.   The Government's Remaining Arguments

The Government raises several other arguments opposing the Moving Defendants' reading of the statute. None of them, however, are persuasive, and they only merit a brief discussion. First, the Government suggests that where cases cited by the Moving Defendants use the word "federal" to describe the predicate offense underlying a § 924(c) charge, this adjective should be read merely as "shorthand" for the "unremarkable" proposition that § 924(c) charges are limited to offenses that "may be prosecuted" in federal court. *See* Gov't's Opp'n at 2-3. Since the word "federal" is not actually in the statute, the Government argues, this Court should obey the literal words of the statute— full stop. *See id.* But even after acknowledging that the case law discussed above is not directly on point (and setting aside our Circuit Court's more specific reference to the "federal code" in *Anderson*), and even ignoring the overwhelming use of the word "federal" in the legislative history to describe § 924(c) predicates, this argument is unconvincing by its own terms.

After all, the Government's argument that D.C. Code offenses "may be prosecuted" in this Court rests on D.C. Code § 11-502(3), which grants this Court jurisdiction over "[a]ny *offense under any law applicable exclusively to the District of Columbia* which offense is joined in the same information or indictment with any *Federal* offense." D.C. Code § 11-502(3) (emphasis added). The text of this jurisdiction-granting statute thus draws a distinction between D.C. Code offenses and the "federal" offenses to which they are joined. So if, as the Government contends, the word "federal" as used in the case law simply means "can be brought in federal district court,"

25

to include D.C. Code offenses, then the term "federal" as used in D.C. Code § 11-502(3) would be rendered meaningless or superfluous. That, of course, makes little sense, and in fact nothing about D.C. Code § 11-502(3) purports to treat D.C. Code offenses as themselves "federal."

Second, for the same reason, the Government's emphasis on the District of Columbia's unique position in our federal system and its assertion that "D.C. Code offenses have a distinctive federal character," *see* Gov't's Opp'n at 3-4, do not convince me that D.C. Code offenses fall within the ambit of § 924(c)'s reach. To be sure, D.C. is different from the other fifty states, particularly in the realm of criminal prosecution.[25] But this does not mean D.C. Code offenses are "federal" in the same sense that U.S. Code offenses are. Again, the linchpin of the Government's argument, D.C. Code § 11-502(3), itself distinguishes between D.C. Code offenses and "federal" offenses. And there is simply *no* indication whatsoever in the legislative history of § 924(c) that Congress meant to capture D.C. Code offenses when it used the term "federal."

Third, and finally, the Government draws an analogy to two statutes, the Assimilative Crimes Act (ACA), 18 U.S.C. § 13, and the Major Crimes Act (MCA), 18

---

[25] *See Goode v. Markley*, 603 F.2d 973, 976 (D.C. Cir. 1979) (noting that: "[v]iolations of the District of Columbia Code and violations of the United States Code are all crimes against a single sovereign, namely, the United States"; "[a]ll crimes prosecuted under the District of Columbia Code are maintained in the name of the United States"; "[i]ndividuals convicted of crimes under either Code are committed to the custody of the Attorney General of the United States"; "[t]he Attorney General can commit violators of the District of Columbia criminal code to federal correctional facilities"; "District of Columbia Code offenders properly incarcerated in federal penitentiaries are subject to parole review before the United States Parole Commission rather than the District of Columbia Parole Board"; and "[t]he District of Columbia Court Reform and Criminal Procedure Act [of 1970] . . ., did not vitiate the essential character of the District of Columbia as an arm of the sovereign United States" (citations omitted)).

U.S.C. § 1153, and suggests that its analysis of the reach of § 924(c) regarding D.C. Code predicates is "consistent with" decisions by other courts permitting § 924(c) charges to lie based on charges brought in federal court under these two statutes. *See* Gov't's Opp'n at 6-7. In the Government's description, the ACA and the MCA "both permit local crimes of violence to be prosecuted in federal court," Gov't's Opp'n at 6, much as D.C. Code § 11-502(3) permits D.C. Code offenses to be brought in this District Court. And therefore it follows that if § 924(c) charges can attach to state crimes brought under the ACA and MCA, *see* Gov't's Opp'n at 6-7 (citing cases), then § 924(c) charges can just as easily be predicated on D.C. Code offenses.

The Government's analogy is flawed, however. The ACA and MCA do not "permit local crimes of violence to be prosecuted in federal courts" directly; on the contrary, those two statutes expressly *transform* conduct that is a crime under state law into a federal, U.S. Code offense. Thus, the Government's citation to the ACA and MCA actually *supports* the Moving Defendants' argument here.

As to the ACA, that statute authorizes the United States to *adopt* state law as federal law for any act or omission occurring on federal property which, "although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated . . . ." 18 U.S.C. § 13; *see also* 18 U.S.C. § 7 (defining territorial jurisdiction of the United States). In other words, a federal indictment charging an assimilated state crime brings the count under 18 U.S.C. § 13, and thus the defendant is charged with a federal, U.S. Code offense. It is not surprising, therefore, that the *one*

case the Government cites in support of its ACA argument itself states that "[a]n assimilated crime *is a federal crime* for § 924(c) purposes and is a crime that can be prosecuted in a court of the United States." *United States v. Terry*, 131 F.3d 138, 1997 WL 759274, at *2 (4th Cir. 1997) (emphasis added); *see also United States v. Minger*, 976 F.2d 185, 187 (4th Cir. 1992) ("When a state law is assimilated under the ACA, the ACA *transforms* the state law into a federal law for purposes of prosecution, and any violation of the state law becomes a crime against the United States." (emphasis added)). Indeed, the Department of Justice itself has acknowledged that prosecutions under the ACA "are not to enforce the laws of the state, but to enforce Federal law, the details of which, instead of being recited, are adopted by reference." Dep't of Justice, United States Attorneys' Manual, Title 9, Criminal Resource Manual 667 (Assimilative Crimes Act).

Next, as to the MCA, 18 U.S.C. § 1153 grants jurisdiction to federal courts, exclusive of the states, over "Indians" who commit any of certain listed offenses "within Indian country." *See* 18 U.S.C. § 1153; § 1151 (defining "Indian country"); *see also United States v. John*, 437 U.S. 634 (1978).[26] Federal statutes define most of the listed

---

[26] 18 U.S.C. § 1153 provides:

> (a) Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, a felony assault under section 113, an assault against an individual who has not attained the age of 16 years, felony child abuse or neglect, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.
>
> (b) Any offense referred to in subsection (a) of this section that is not defined and

offenses, and those that are not so "defined and punished by Federal law" are to be defined and punished in accordance with the laws of the state where the crime was committed. 18 U.S.C. § 1153(b). Thus, to the extent a listed offense is defined by federal law, it is *already* a federal, U.S. Code offense, and it is unremarkable that courts have found § 924(c) counts properly charged based on such an MCA predicate. *See, e.g.*, *Standing Bear v. United States*, 68 F.3d 271, 272 (8th Cir. 1995) (affirming that federal district court had jurisdiction over § 924(c) charge where 18 U.S.C. § 1153 conferred federal court jurisdiction for the underlying felony of murder within Indian country, in violation of 18 U.S.C. § 1111). To the extent an offense is not so defined and must instead be defined by state law, on the other hand, the Government has not pointed to any cases involving such a predicate supporting a § 924(c) charge. But even assuming a § 924(c) charge would properly lie in that circumstance, the MCA operates to grant federal jurisdiction over those offenses *directly* when they are charged under 18 U.S.C. § 1153. Not so for the D.C. Code jurisdictional statute, which grants this Court jurisdiction over D.C. Code crimes in a manner similar to pendent jurisdiction.

In short, a § 924(c) charge brought under the ACA or MCA is, in fact, predicated on a federal, U.S. Code offense. By contrast, the D.C. Code offenses underlying the § 924(c) counts at issue in the instant case come before this Court in a completely different posture. As D.C. Code § 11-502(3) makes clear, this Court has jurisdiction over

---

punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

D.C. Code offenses when they are properly *joined* to federal, U.S. Code offenses; nothing

in that statute, however, converts or morphs those D.C. Code offenses into federal

offenses.

## CONCLUSION

While it is true that criminal defendants in the District of Columbia are, at times,

treated differently from defendants in other federal courts as a result of this District's

unique joinder provision, our Circuit Court has found that being tried under two statutory

schemes at the same time—and as a result receiving more severe punishment—does *not*

violate the equal protection clause. *See United States v. Sumler*, 136 F.3d 188, 190-91

(D.C. Cir. 1998) (citing *United States v. Jones*, 527 F.2d 817, 822 (D.C. Cir. 1975)).  But

while it is one thing for a defendant in this District to incidentally face stiffer sentences as

a result of joinder rules, it is quite another for him to face a severe mandatory minimum

sentence—up to and including life in prison—as a result of the Government electing to

bring federal charges here that it could *not* bring in any of the fifty states.[27]  Indeed, to

permit the Government to bring the challenged § 924(c) charges, predicated on D.C.

Code offenses, would unfairly distinguish prosecutions of § 924(c) in this Court from

---

[27] While I will not speculate on the specific motive behind the Government's charging decision,
it is clear what the Government *could have* done in this case.  Instead of bringing § 924(c)
charges, it could have brought D.C. Code § 22-4504(b) charges for possessing a firearm while
committing a crime of violence based on each of the predicate violent D.C. Code offenses
alleged in Counts 2, 8, 10, 12, and 14.  *See* D.C. Code §§ 22-4504(b), 22-4501(1), 23-1331(4)
(for purposes of § 22-4504(b), the term "crime of violence" includes, *inter alia*, assault with a
dangerous weapon, kidnapping, robbery, extortion, and burglary).  It is also evident that charging
in this manner would *not* have resulted in the "stacking" effect created by § 924(c) because,
unlike § 924(c), D.C. Code § 22-4504(b) provides for a sentence of at least five years but no
more than 15 years and does not provide for enhanced penalties for subsequent convictions or
require that any such sentences run consecutively.  Draw your own conclusions!

those in all other federal district courts.  My review of the legislative history convinces me that Congress did not intend such a sentencing oddity, but even if any ambiguity remained, it should be resolved in favor of the Moving Defendants under the rule of lenity.  *See, e.g.*, *Simpson*, 435 U.S. at 14 (applying "the established rule of construction that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity'" (quoting *United States v. Bass*, 404 U.S. 336, 347 (1971))).  Accordingly, the challenged § 924(c) counts must be dismissed.

As a result of my ruling today, these four Moving Defendants no longer face a potential sentence of *mandatory* life in prison, if convicted.  With regard to defendant Dawayne Brown, one § 924(c) charge remains (Count 17).  With regard to defendant Ira Adona, three § 924(c) charges remain (Counts 17, 28, and 29).[28]  With regard to defendant Breal Hicks, two § 924(c) charges remain (Counts 17 and 28).  And with regard to defendant Keith Matthews, one § 924(c) charge remains (Count 17).

RICHARD J. LEON
United States District Judge

---

[28] The Government has acknowledged, however, that Counts 28 and 29 would merge at sentencing, should a jury convict him of both offenses.  *See supra* note 8.